FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2001 OCT 17  P 3: 39

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PROFESSIONAL COMMUNICATIONS,  :
INC., et al.                  :
                              :
    v.                        :    CIVIL NO. CCB-00-CV1309
                              :
CONTRACT FREIGHTERS,          :
INC., et al.                  :
                              :

...oOo...

**MEMORANDUM**

Pending in this case alleging negligent shipping, storing and maintaining of a shipment of cell phones are four motions for summary judgment. The motions have been filed by the following parties: (1) Defendant, Covenant Transport, Inc. ("Covenant") against Plaintiffs, Professional Communications, Inc. ("PCI") and AI Marine Adjusters ("AI"); (2) Defendant and Cross-Defendant, Covenant against Defendant and Cross-Plaintiff, HBI Priority Freight ("HBI"); (3) Plaintiffs PCI and AI against Defendant, HBI; and (4) Defendant, Contract Freighters, Inc. against Plaintiffs, PCI and AI. This matter has been fully briefed and no hearing is necessary. <u>See</u> Local Rule 105.6. For the reasons that follow, Covenant's motions against PCI and AI will be granted, Covenant's motion against HBI will be granted, PCI's and AI's motion against HBI will be granted in part and denied in part and Contract Freighter's motion against PCI and AI will be denied.



I.

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shaw v. Stroud, 13 F.3d 791, 794 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997) (citing Anderson, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248; Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence" in support of the non-moving party's position is not enough to defeat a summary judgment motion. Anderson, 477 U.S. at 252.

II.

PCI purchased 38,000 cellular phones from YAM International in Miami, Florida. PCI retained Eagle USA Airfreight ("Eagle") to ship 63 crates from Miami, Florida to Baltimore, Maryland. (Pl. Mem. at 2.) Eagle contacted Covenant to coordinate the shipment of the crates. The relationship between Eagle and Covenant was set forth by Todd E. Smith's uncontroverted affidavit. Smith is employed by Covenant as a Risk Manager. He stated that during the relevant time period, Eagle agreed to coordinate all of its shipping through Covenant. (Smith Aff. at ¶ 3.) Covenant agreed to transport some of the shipments for Eagle directly. For the other shipments, Covenant created a separate logistics company, Covenant Transport Logistics, Inc. ("CTLI"). (Id. at ¶¶ 4-5.) CTLI acted as a broker for PCI's shipment of cell phones. (Id.) CTLI arranged for Contract Freighters to be the actual carrier for the shipment of cell phones in this case.

On July 29, 1999, Henry Caldarozza and Dawn Lynch, the owners of PCI, observed 63 crates being loaded into an Eagle truck at YAM International's warehouse. Caldarozza and Lynch noted that the crates were secured and undamaged. (Pl. Mem. as to HBI at 3.) The Eagle truck transported the 63 crates to Eagle's hub where they were stored overnight and loaded the next morning on a truck operated by Contract Freighters and driven by Arnold Langley. (Id. at 4.) Only 59 of the 63 crates were loaded onto the truck. The four remaining crates, which were left behind

-3-

because they had slightly different dimensions, were delivered by Eagle directly to PCI on August 4, 1999. (Id.) Langley transported the 59 crates to Glen Burnie, Maryland and arrived on July 30, 1999. (Id. at 5.) Upon receipt, HBI's warehouse manager Christof Filip inspected the shipment. Mr. Filip noted that four of the crates were damaged and that there were cell phone chargers loose and broken in the shipment. (HBI Opp. Mem. at 12; Pl. Ex. I, Pl. Mem.) From July 31, 1999 to August 4, 1999, the crates were stored at the Glen Burnie warehouse.

On August 4, 1999, HBI delivered the crates to PCI's Maryland office in two shipments. The first shipment was 19 crates on pallets. Upon receipt, Dawn Lynch noted there was "one open lid, one missing lid and broken lids on three." (HBI Delivery Sheet, Pl. Ex. K, Pl. Mem.) The second shipment was 40 crates on pallets. Upon receipt, Dawn Lynch noted there was "very noticeable damage to the pallets, also open lids on almost all pallets." (HBI Delivery Sheet, Pl. Ex. L, Pl. Mem.) Upon delivery to PCI, 5,134 cell phones were missing.

### III.

Now before this Court is a motion for summary judgment filed by Defendant, Covenant, against Plaintiffs, PCI and AI. Covenant is the broker who contracted for Contract Freighters to deliver the crates from Florida to Maryland. PCI and AI allege that Covenant is liable as a broker under the Carmack Amendment.

The Carmack Amendment provides shippers with the right to sue carriers for any damage to goods during transport. 49 U.S.C. § 14706(a)(1). In general, brokers are not liable for the value of goods lost during transport unless they are negligent. Commercial Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 257-59 (S.D.N.Y. 1999); Phoenix Assurance Co. v. K-Mart Corp., 977 F. Supp. 319, 325-26 (D.N.J. 1997).

Under the Carmack Amendment, a broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that ... sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carriers for compensation." 49 U.S.C. § 13102(2). A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12).

The plaintiffs do not argue that Covenant is a carrier. Instead they contend that Covenant should be held liable as a broker and have made two arguments to support this point.

A.

The plaintiffs first argue that Contract Freighters, the actual carrier, was acting as Covenant's agent. The plaintiffs assert that Covenant is liable for the damages caused by its agent, Contract Freighters. They rely on FDL Foods v. Kokesch Trucking, 599 N.E.2d 20, 26-27 (Ill. App. Ct. 1992)(applying

Illinois agency law).

Maryland follows the rule of *lex loci contractu,* which requires that a contract be construed under the law of the state in which it was made. See Hyde v. Fidelity & Deposit Co., 23 F.Supp.2d 630, 632 (D.Md. 1998). Contract Freighters is incorporated and has its principal place of business in Missouri. Covenant is incorporated and has its principal place of business in Tennessee. The subject of this contract was a shipment originating in Florida. Presumably, either Missouri, Tennessee or Florida law applies. For purposes of this motion, Missouri, Tennessee and Florida laws on agency are in substantial agreement and are in line with general agency principles.

An agency relationship has certain essential characteristics: (1) the agent is authorized to alter the legal relationship between the principal and third persons; (2) the agent is a fiduciary with respect to matters within the scope of the agency; and (3) the principal has the right to control the conduct of the agent with respect to matters within the scope of the agency. See State ex rel. Ford Motor Co. v. Westbrooke, 12 S.W.3d 386, 390 (Mo. App. 2000)(citing Restatement (Second) of Agency); Ilgen v. Henderson Prop. Inc., 683 So.2d 513, 515 (Fla. Dist. Ct. App. 1996)("[T]he elements essential to the existence of an actual agency relationship are: (1) acknowledgment by the principal that the agent will act for him; (2) the agent's

acceptance of the undertaking; and (3) control by the principal over the actions of the agent."); Roberts v. Iddins, 797 S.W.2d 615, 617 (Tenn. Ct. App. 1990)("An agent is a fiduciary with respect to matters within the scope of the agency and the relationship implies the principal has reposed trust and confidence in the agent, who is bound to exercise the utmost good faith, loyalty and honesty toward the principal.").

The plaintiffs have failed to demonstrate that Contract Freighters acted as an agent of Covenant. In Kokesch, the case relied upon by plaintiffs, sufficient evidence existed for a jury to conclude the truck driver who actually transported the shipment was an agent and not an independent contractor. 599 N.E.2d at 26-27. For example, the driver represented himself as working for the principal, Kokesch, in order to gain entry into a secured premises. Id. at 26. The bill of lading listed Kokesch as "carrier" and the driver as "agent." Id. When the truck broke down, the driver contacted Kokesch to ask for repair funds. Id. at 26-27. Additionally, Kokesch played a substantial role in accepting responsibility for the loss and salvaging the load. Id. at 27.

In this case, the plaintiffs have not produced any evidence that the relationship between Covenant and Contract Freighters was anything more than a business contract to ship goods. A mere contract to ship goods does not establish an agency relationship.

-7-

The fact that the "Driver Trip Sheet" included a heading with attention to "Mike/Covenant" and contained instructions for the driver to report any delays to Covenant Transport is consistent with Covenant's role as broker and does not establish a principal-agent relationship. (See Pl. Mem., Ex. D.)

B.

If a motor carrier broker, like Covenant, is found to be negligent, it may be held liable for damage to the shipment. See Commercial Union Ins. Co., 50 F. Supp. 2d at 257. The plaintiffs also argue in their memorandum in opposition that Covenant was negligent "in failing to assure that the carrier provided to carry the cargo maintained a seal log and employed honest drivers." (Pl. Opp. Mem. at 4.)

Motor carriers use seals as a way of attesting to the integrity of the load. Seals are attached to loaded containers, and they cannot be removed and restored without noticeable damage. As a result, seals "provide some measure of protection against casual pilferage." PNH Corp. v. Hullquist Corp., 843 F.2d 586, 587 (1st Cir. 1988). Seals can be used as evidence of whether a shipment was tampered with. See id.

For tort claims, Maryland follows the doctrine of *lex loci delicti*, which "results in the application of the procedural law of the forum state, and the application of the substantive law of the place (state) of the wrong." Naughton v. Banker, 691 A.2d

712, 716 (Md.Ct.App. 1997)(citing Hauch v. O'Connor, 453 A.2d 1207 (Md. 1983) ("Maryland is in the minority of states continuing to apply *lex loci delicti*."). The shipment of cell phones originated in Florida and arrived in Maryland approximately 24 hours later. The primary handling of the crates took place in both Florida and Maryland. Therefore, it is most appropriate to apply either Florida or Maryland law in this case.

The elements of negligence in both Florida and Maryland are in line with general negligence principles. On a claim of negligence, a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach by the defendant was the actual and proximate cause of a demonstrable injury suffered by the plaintiff. See Pahanish v. Western Trails, Inc., 517 A.2d 1122, 1128 (Md. Ct. Spec. App. 1986)(citations omitted); see also Lisanti v. City of Port Richey, 787 So.2d 36, 37 (Fla. Dist. Ct. App. 2001)("The elements for negligence are duty, breach, harm, and proximate cause."). Even assuming that Covenant owed the plaintiffs a duty, the plaintiffs have not produced any evidence that Covenant breached this duty. For example, the plaintiffs have not shown that Covenant failed to investigate Contract Freighter's shipping procedures or prior shipping history. Further, even assuming there was breach of a duty, the plaintiffs have not produced any evidence that Covenant's hiring of Contract Freighters caused the

loss in cell phones.

C.

The plaintiffs have argued in the alternative that this motion should be continued until the completion of discovery. Although the plaintiffs failed to state what discovery is necessary, they did state that depositions were scheduled for Contract Freighter's driver, Eagle's warehouse manager, HBI's warehouse manager, and PCI's representative. Those depositions are now complete, and the plaintiffs still have failed to establish facts necessary to establish a genuine dispute as to any material fact regarding an agency-principal relationship or Covenant's negligence. Accordingly, summary judgment is appropriate at this time.

IV.

Also pending is a motion for summary judgment filed by Defendant, Covenant, against Defendant and Cross-Plaintiff, HBI. Covenant is the broker who contracted for Contract Freighters to drive the crates from Florida to Maryland. HBI is the owner of the warehouse where the crates were stored in Maryland. HBI alleges that Covenant is liable as a joint tortfeasor for contribution and indemnification.

There can be a tort-based right to indemnification when there is a great disparity in the fault of two tortfeasors, and one tortfeasor has paid for a loss that was primarily the

responsibility of the other. See Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124, 127 (4th Cir. 1988). In general, there is a tort-based right to contribution when joint tortfeasors are held liable and one tortfeasor has paid more than her *pro rata* share of the damages. See Lerman v. Heeman, 685 A.2d 782, 785 (Md. Ct. App. 1996).

In order to prevail, HBI must establish a legal basis to hold Covenant liable as a tortfeasor. As noted above, Covenant was the broker which contracted with Contract Freighters to carry the cell phones from Florida to Maryland. HBI has offered no evidence of Covenant's liability as a tortfeasor. Accordingly, Covenant cannot be held liable for indemnification or contribution to HBI, and summary judgment is appropriate at this time.

V.

Also before this Court is a motion for summary judgment filed by Plaintiffs, PCI and AI, against Defendant, HBI. PCI and AI, allege that HBI, owner of the Maryland warehouse, is liable for a breach of bailment.

The plaintiff has the initial burden to demonstrate a specific lack of care on the part of the bailee or raise a presumption of some unspecified negligence on the part of the bailee. See Commodities Reserve Corp. v. Belt's Wharf Warehouses, Inc., 529 A.2d 822, 824 (Md. 1987). To proffer unspecified

negligence, the plaintiff must demonstrate the delivery of personal property, in this case cell phones, to the bailee in good condition and redelivery of the goods to the bailor in bad condition. Id. Once this prima facie evidence has been established by the plaintiff, the burden shifts to the bailee to show a lack of negligence. Id.

In this case, the plaintiff has met its initial burden of establishing some unspecified negligence on the part of the bailee. Fifty-nine crates were loaded on the CFI truck in Miami. (See Pl. Mem. at 4.) There is no evidence of any damage to the crates at the time of loading in Florida. (See Pl. Mem. at 4-5.) The delivery arrived at HBI Warehouse in Glen Burnie, Maryland, approximately 24 hours later. HBI Warehouse Manager Christof Filip met the delivery and observed the crates. Mr. Filip noted that four crates were missing from the delivery and that the four crates he observed were damaged and had open lids. (See Pl. Mem. at 5-6; HBI Opp. Mem. at 12.) He also noted that there were loose cell phone chargers on the floor. (See id.) Mr. Filip did not note or observe any damage to the other 55 crates. Accordingly, PCI has established that 55 crates were delivered to HBI in good condition. The plaintiff was also able to establish that the crates were delivered to PCI in bad condition. The crates arrived at PCI in two deliveries, and Lynch noted extensive damage to the crates in both of these deliveries. HBI drivers initialed

documents noting such damage. (See Pl. Mem. at 6-7; HBI Opp. Mem. at 13-14.)

HBI's attempts to show a dispute of material fact are unsuccessful. HBI points out that a seal was placed on the truck in Florida and that a different seal was removed from the truck when the truck reached Maryland. (See HBI Opp. Mem. at 6-8; HBI Ex. 1, Ans. 8, HBI. Opp. Mem.) This, however, does not create a factual dispute over liability. Even if the seal was broken, damage to the other 55 crates would have been noted and observed by HBI employees if it existed upon arrival at HBI's warehouse.

Filip, an HBI employee, testified that he removed each crate, two or three at a time, from the truck and then observed each crate for damage following the unloading. (See Filip Dep. at 22-23.) Filip also testified that it was his duty to inspect deliveries for damage. (See Filip Dep. at 9.) Filip only documented and testified that four crates were damaged. After unloading and observing each crate, Filip, as part of his key responsibilities, would have noted additional damage to any of the other crates. When the crates were reloaded into HBI trucks by HBI employees for delivery to PCI, the crates were stacked one high and no HBI employee, including Filip and the drivers of the deliveries, noted or testified to any additional crate damage at the time of reloading. (See Koepf Dep. at 13.) Additionally, Filip's supervisor, Rick Morrison, observed the crates and

testified that "the crates were in pretty good shape." (Morrison Dep. at 21.) Morrison also testified that only four crates were damaged or had opened lids. (See Morrison Dep. at 29-30.) Thus, HBI has failed to establish a dispute over the condition of 55 of the crates upon delivery to HBI.

HBI next challenges the condition of the 55 crates at the time they were delivered to PCI. HBI asserts that Lynch, a co-owner of PCI, exaggerated the damage to the crates and added notations on the delivery bill that were not initialed by the HBI driver, Gary Koepf. Even assuming these arguments are true, it is still clear that more than 4 crates arrived at PCI in damaged condition. Koepf did initial the statement that there was "very noticeable damage to pallets." (See Pl. Mem., Ex. L.) Koepf also testified that there were five to six crates with open lids. (See Koepf Dep. at 18.) Finally, HBI has not presented any evidence that the 19 crates delivered separately by HBI were undamaged. HBI employee Andy Pope initialed the notation on the delivery receipt that there was "one open lid, one missing lid and three broken lids." (See Pl. Mem., Ex. C.) Thus, HBI has failed to establish a genuine dispute that some of these 55 crates were damaged upon delivery to PCI.

HBI makes a number of other arguments which can be quickly dismissed. First, HBI contends that the plaintiffs are not proper party plaintiffs. This argument fails because the cell phones

were purchased by PCI and C & L Beepers. Lynch and Caldarozza, owners of PCI, also own C & L Beepers.

Second, HBI asserts that AI is not a proper plaintiff because it only adjusted the claim and suffered no loss. HBI admits that a sum of $27,421.15 was paid by an insurance company to PCI for the loss of the cell phones. (See HBI Opp. Mem. at 2.) HBI argues that American Home Assurance Company ("American Home"), the underwriting company, actually paid the sum and should be the plaintiff in this case. American Home and AI are subsidiaries of the same company. (See Huck Dep at 6.) Both subsidiaries cooperate in the dealing of claims. It can be determined at a later point if American Home is the proper recipient of damages, however, this is not an argument that creates a genuine dispute to defeat summary judgment.

Third, HBI asserts that the cell phones never existed. Packing lists were apparent on all the crates certifying the presence of cell phones. (See Lynch Dep. at 72-74; see also Pl. Mem. Ex. B (displaying photographs of the crates containing cell phones.)) Additionally, HBI employees saw cell phone chargers on the floor of the Contract Freighters' delivery truck, and an invoice from the seller of the cell phones, YAM International, has been produced. (See Pl. Mem. Ex. A.)

Fourth, HBI argues that the damage to the load occurred before departing Florida. Such damage would have been noticed by

Mr. Filip upon arrival at the HBI warehouse, and it was not.

Finally, HBI argues that the missing phones may have been taken from the four crates that were delivered directly to PCI by Eagle. Although the Eagle documents relating to the shipment of the four crates include a notation referring to open crates and missing boxes, both Lynch and the driver of this shipment, Anthony Pagliaro, testified that this notation referred to the earlier shipments and that there was no damage to the Eagle shipment. (See Lynch Dep. at 88-89; Pagliaro Dep. at 27-29.) Since there were no crates missing from the Eagle delivery, Lynch's notation must have referred to the earlier shipments of crates by HBI. There is no other evidence that cell phones were missing from these four crates.

The plaintiff has established that 55 crates were in good condition when delivered to HBI Warehouse and that some of those 55 crates were in bad condition when redelivered to PCI. HBI has been unable to refute its negligence and is liable as a bailee under Commodities Reserve. Accordingly, summary judgment is appropriate on the issue of liability of Defendant, HBI.

Plaintiffs seek damages in the amount of $177,210 based on the market value of 5,134 missing cell phones, labor, storage costs and pre-judgment interest. Clearly, four crates were damaged when they arrived at HBI Warehouse. (See Pl. Mem. at 6.) Additionally, chargers were loose on the floor. (See id.)

Therefore, some of the missing phones may have been removed from the four crates that were damaged before reaching HBI.

Since it is impossible to determine the number of missing phones that were removed from the 55 crates delivered by HBI, damages against HBI cannot be determined at this time. HBI has not argued and has produced no evidence that all of the missing phones could have been removed from the four damaged crates arriving at the warehouse. Plaintiffs apparently argue that the four damaged crates that arrived at HBI only contained chargers. (See Pl. Reply Mem. at 4.) Although it appears that these four crates only contained chargers when they arrived at HBI, there is no evidence that these four crates only contained chargers when they were originally loaded in Florida. For example, there is no evidence that chargers and cell phones were packaged separately. Some of the cell phones may have been removed from these four damaged boxes before they arrived at HBI. Accordingly, summary judgment on the issue of damages is inappropriate at this time.[1]

VI.

Also before this Court is a motion for summary judgment filed by Defendant, Contract Freighters, against Plaintiffs, PCI

---

[1] Since damages are disputed, I will not rule on the issues of lost profits, pre-judgment interest or labor costs, although I note that Plaintiff's claim for lost profits on the sale of 20,000 cell phones will be difficult to prove. It is not even clear there was a contract between PCI and John Chirando of Quality One Paging to buy 20,000 phones. (See Caldarazo Dep. at 37.)

-17-

and AI. Contract Freighters is the company that delivered the crates from Florida to Maryland. PCI and AI allege that Contract Freighters is liable as a carrier under the Carmack Amendment.

The Carmack Amendment provides shippers with the right to sue carriers for any damage to goods during transport. 49 U.S.C. § 14706(a)(1). The Carmack Amendment establishes that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by: (a) an act of God; (b) a public enemy; (c) an act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. <u>Ward v. Allied Van Lines, Inc.</u>, 231 F.3d 135, 139-40 (4th Cir. 2000). Plaintiffs and HBI have established that four crates were delivered by Contract Freighters' driver, Arnold Langley, to the HBI warehouse in damaged condition. When the Contract Freighters' truck was opened by HBI warehouse manager Christof Filip, chargers were loose on the floor of the truck and four crates had opened lids and damaged walls. (<u>See</u> Pl. Mem. at 6; HBI Mem. Opp. at 12.) Therefore, some of the missing cell phones may have been removed from the four crates delivered to HBI in damaged condition. Contract Freighters has offered no evidence that it was not responsible for the damaged crates or that there were no missing cell phones from those four crates. Accordingly, summary judgment is inappropriate at this time.

Further proceedings are necessary to establish and apportion

damages as between HBI and Contract Freighters.

    A separate Order follows.

10/17/01
Date

Catherine C. Blake
United State District Judge